UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| SETH CHARLES (KLEIN) BEN HAIM, *et al.*, | ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | 08-cv-520 (RCL) |
| ISLAMIC REPUBLIC OF IRAN, *et al.*, | ) ) ) | |
| Defendants. | ) ) | |

**MEMORANDUM AND ORDER REGARDING SERVICE**

On September 9, 2012 plaintiffs filed a Notice of Post Judgment Service [27] describing attempted mail service under 28 U.S.C. § 1608 against defendants the Islamic Republic of Iran and the Iranian Ministry of Information and Security (MOIS). Plaintiffs claim that post judgment service was effectuated on defendant Islamic Republic of Iran where a service package was signed for and then immediately rejected. Plaintiffs claim that post judgment service was effectuated against defendant MOIS where the package was rejected outright.

On October 2, this Court ordered plaintiffs to identify legal authority to support their claim that this constituted adequate service under FSIA. [28] On October 12, plaintiffs submitted a supplemental brief. [29]

Most of the legal authorities cited in the brief are not on point. Some of plaintiffs' authorities actually deal with diplomatic service under § 1608(a)(4), not mail service under § 1608(a)(3) which is the provision at issue here. *See* Pl. Supp. Br. at 2 (citing *Ben-Rafael v. Islamic Republic of Iran*, 540 F. Supp. 2d 39, 53 (D.D.C. 2008)). Other of plaintiffs' authorities deal with service outside the context of FSIA, and are thus inapposite. *See, e.g.,* Pl. Supp. Br. at 3

(quoting *Murray v. Jewel County*, 2011 WL 4485931, at * 4 (D. Colo. Sept. 28, 2011) (quoting an Oklahoma service statute)).

Plaintiffs' strongest legal authority for their position is a footnote from this Court's opinion in *Flatow v. Islamic Republic of Iran*, 99 F. Supp. 1, 6 n.1 (D.D.C. 1998). In that footnote, this Court held that that mail service on the Islamic Republic of Iran was adequate under § 1608(a)(3) where the service package was rejected. The Court observed:

> The Islamic Republic of Iran also apparently attempted to evade service of process by international registered mail, pursuant to 28 U.S.C. § 1608(a)(3). When the service package was returned to counsel in June 1997, the package had been opened, the return receipt, which counsel had not received, had been completely removed, and the message "DO NOT USA" was written in English across the back of the envelope. This contumacious conduct bolsters the entry of a default judgment.

999 F. Supp. at 6 n.1.

However, this authority does not support plaintiffs' case. In the present case, there is no evidence of any "contumacious conduct" of the type that led this Court in *Flatow* to find service had been effectuated. *See id.* Here defendants simply rejected the service packages; they did not open the package, nor did they take the return receipt, nor did they scrawl any message on the back of the envelope. Though someone apparently signed for one package before rejecting it, this does not match the "contumacious conduct" that led this Court to find service adequate in *Flatow*. Thus there is no legal basis for this Court to conclude that service by mail has been effectuated on either defendant.

As this Court noted in its October 2, 2012 Order [28], before permitting enforcement of a FSIA judgment, a court must ensure that all foreign entities involved receive notice of the exposure of their interests to attachment and execution. Section 1610(c) requires that "notice required under section 1608(e)" be given, and § 1608(e) requires that "[a] copy of any such

default judgment shall be sent to the foreign state or political subdivision in the manner prescribed for service in this section." § 1608(e).

Section 1608 divides the methods for serving foreign entities under FSIA into two sections: procedures governing service "upon a foreign state or political subdivision" and procedures governing service "upon an agency or instrumentality of a foreign state." 28 U.S.C. § 1608(a)-(b). Here, plaintiff has sued one entity in each category.

With respect to defendant Iran, service on a foreign state or political subdivision is governed by § 1608(a), which "prescribes four methods of service, in descending order of preference. Plaintiffs must attempt service by the first method (or determine that it is unavailable) before proceeding to the second method, and so on." *Ben–Rafael v. Islamic Republic of Iran*, 540 F. Supp. 2d 39, 52 (D.D.C. 2008). These methods are service (1) "in accordance with any special arrangement . . . between the plaintiff and the foreign state," (2) "by delivery . . . in accordance with an applicable international convention," (3) "by sending a copy of the summons and complaint and a notice of suit, together with a translation of each into the official language of the foreign state, by any form of mail requiring a signed receipt," and, as a last resort "if service cannot be made within 30 days under paragraph (3)" then (4) "by sending two copies" to the U.S. Department of State, which "shall transmit one copy of the papers through diplomatic channels to the foreign state and shall send to the clerk of the court a certified copy of the diplomatic note indicating when the papers were transmitted." 28 U.S.C. § 1608(a)(1)-(4).

Here, the first two methods of service are inapplicable, and plaintiffs have failed to accomplish service under paragraph (3) by mail for well over the statutory period of 30 days. Indeed, plaintiffs' first effort to accomplish service via this method was initiated over 13 months

ago on September 9, 2011. [21] Because more than 30 days have elapsed and plaintiffs have failed to effectuate service by mail, pursuant to § 1608 plaintiffs must now attempt service through diplomatic channels under paragraph (4) of that section.

As for defendant MOIS, an instrumentality or agency of a foreign state, service is governed by § 1608(b). That section permits service (1) "in accordance with any special arrangement", (2) "by delivery . . . either to an officer, a managing or general agent, or to any other agency authorized . . . to receive service of process in the United States [or] in accordance with an applicable international convention on service of judicial documents," (3) or, "if reasonably calculated to give actual notice, by delivery . . . as [either (A) ] directed by an authority of the foreign state[, or (B) ] any form of mailing requiring a signed receipt, to be addressed and dispatched by the clerk of the court[, or (C) ] as directed by order of the court consistent with the law of the place where service is to be made." 28 U.S.C. § 1608(b)(1)-(3).

Here, again, the first two methods are inapplicable, and plaintiffs have failed to accomplish service by mail under paragraph (3) after over a year of trying. Thus, plaintiffs must now attempt to effectuate service on MOIS via diplomatic channels pursuant to § 1608 (a)(4). *See, e.g.*, *Murphy v. Islamic Republic of Iran,* 778 F. Supp. 2d 70, 71 (D.D.C. 2011) (holding that under the FSIA, plaintiffs had to effectuate post-judgment service on both Iran and MOIS via diplomatic channels over plaintiffs' objections).

The Court pauses to emphasize, as it has before, that the above conclusion should not be read as a lack of sympathy for plaintiffs' position. *See Murphy*, 778 F. Supp. 2d at 73. The U.S. Department of State charges a substantial fee for victims of terrorism—such as plaintiffs here— who must use the State Department to serve Iran with FSIA-related papers. *See* Schedule of Fees for Consular Services, 75 Fed. Reg. 36532, 36534 (June 28, 2010) (setting $2,275 fee for

4

processing FSIA judicial assistance cases). In a context where successful enforcement of judgments is notoriously difficult and the prospects for recovering damages are rather bleak, *see In re Islamic Republic of Iran Terrorism Litig.*, 659 F. Supp. 2d 31, 49 (D.D.C. 2009), the imposition of these substantial fees imposes a significant burden upon victims of terrorism. And, sadly, this is not the first time that the government has stationed itself in a position to undermine the interests of victims of terrorism in FSIA litigation. *See In re Terrorism Litig.*, 659 F. Supp. 2d at 53. The federal government has promised victims of terrorism a forum and opportunity to seek compensation for their devastating losses, exploited this glimmer of hope to extract exorbitant fees from those victims, and then actively undermined those victims' efforts to obtain satisfaction of legal and valid judgments in order to protect its own coffers. *See id.* Three years ago, this Court observed that "the great travesty in all this is that our political branches have essentially told victims of terrorism to continue their long march to justice down a path that leads to nowhere." *Id*. at 125. The government now taxes those victims for their travails, as well. *See Murphy*, 778 F. Supp. 2d at 73.

Despite these injustices, the Court cannot ignore the important procedural protections for foreign states and their instrumentalities built into the FSIA. Accordingly, it is hereby

**ORDERED** that no later than November 30, 2012, plaintiffs attempt post judgment service on Iran and MOIS through diplomatic channels under § 1608(a)(4).

**SO ORDERED**

Signed by Royce C. Lamberth, Chief Judge, on November 5, 2012.