IN UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| Seth Charles Ben Haim, et al.,<br><br>    Plaintiffs,<br><br>v.<br><br>The Islamic Republic of Iran, et al.,<br><br>    Defendants. | CIVIL ACTION NO. 08-520-RCL |

**DECLARATION OF JOHN O. JEFFREY IN SUPPORT OF NON-PARTY ICANN'S MOTION TO QUASH PLAINTIFFS' WRITS OF ATTACHMENT**

I, John O. Jeffrey, declare and affirm as follows:

1. I am the General Counsel and Secretary for the Internet Corporation for Assigned Names and Numbers ("ICANN"). I have personal knowledge of the matters set forth herein and am competent to testify as to those matters. I make this declaration in support of ICANN's Motion to Quash Plaintiffs' Writs of Attachment.

2. ICANN is a California public benefit nonprofit corporation, which, among other things, administers, at the top level, the unique identifiers that allow computers and other devices on the Internet to communicate with one another.

3. Computers find one another over the Internet by using Internet Protocol ("IP") addresses, which are strings of numbers separated by periods, such as "192.0.34.163." An IP address is a numerical identifier of a particular source of data on the Internet, such as a website. The Internet's domain name system ("DNS") provides a human interface to the IP system by converting these numeric IP addresses into more easily-remembered sets of characters and numbers referred to as "domain names."

4.      A domain name can be viewed as being made up of at least two elements – what is before and after the last "dot." The part to the right of the last dot, such as "COM," "GOV" or "US" is known as a "top-level domain" or "TLD." The part of a domain name before the last dot, such as the "USCOURTS" in USCOURTS.GOV, is the word or phrase that individuals and entities register as second-level domain names in those TLDs, which are then used to identify online websites and email addresses.

5.      Prior to ICANN's formation in 1998, the United States Government, via contractual arrangements with third parties, administered the DNS. ICANN was formed in 1998 as part of the U.S. Government's commitment to, among other things, privatize the Internet. ICANN's mission is to protect the stability, integrity, interoperability and utility of the DNS on behalf of the global Internet community.

6.      ICANN has an international Board of Directors, approximately 300 staff members, and an Ombudsman. The ICANN community is made up of thousands of stakeholders and approximately 140 governments involved in setting and advising on policy, and providing technical coordination functions of the Internet. The community is organized through three Supporting Organizations, four Advisory Committees, a group of technical expert advisors, a Nominating Committee, and a large, globally distributed group of community members who participate in ICANN's processes.

7.      One of the ways that ICANN fulfills its administrative role is by approving qualified entities for the responsibility of operating the Internet's TLDs. These entities, which are often referred to as "Registry Operators," are tasked with managing the definitive list of domain names registered within the TLD they manage. There are a number of long-standing "generic" TLDs, such as .COM, .NET and .ORG.

8.      Another way that ICANN fulfills its administrative role is by performing what are known as the Internet Assigned Numbers Authority ("IANA") functions. Since 2000, the IANA functions have been performed by ICANN pursuant to contracts with the U.S. Department of Commerce ("IANA Functions Contract"). The most recent IANA Functions Contract was entered into in 2012, and remains in effect today.

9.      One of the functions ICANN performs is maintaining the technical and administrative details of the DNS's "Root Zone Database" used to compile the Root Zone of the Internet, which is the authoritative place to look up the network location of the more than 650 generic TLD in operation today. When a computer or device is establishing the location of a service on the Internet using its domain name, it may consult the Root Zone to determine that domain name's location. The Root Zone provides a referral to a list of servers that are dedicated to hosting the TLD that contains the requested domain names.

10.     ICANN is currently in the process of evaluating hundreds of applications for new generic TLDs, several hundred of which have already been delegated and in various stages of operation. ICANN enters into comprehensive contracts with the generic TLD Registry Operators; these contracts set forth the parties' obligations and duties.

11.     In addition to the generic TLDs, mentioned above, there are more than 280 country code TLDs ("ccTLDs") in operation (including the non-ASCII ccTLDs), such as .US for the United States, .JP for Japan and three at issue in this matter, .IR for Iran, .SY for Syria and .KP for North Korea. ccTLDs are generally used for websites and communications specific to a country or region. Before ICANN came into existence, ccTLDs were created for countries appearing on a list of nations prepared by the International Organization for Standardization in its ISO 3166-1 publication, using ASCII characters, and some ccTLDs have been created since then. More

recently, internationalized domain name ("IDN") ccTLDs have been created, using non-ASCII characters, such as Arabic script or Chinese characters.

12.     ccTLDs are administered by entities generally referred to as ccTLD managers.  Each recognized ccTLD manager is recorded in the Root Zone Database along with an administrative contact and a technical contact.  Rules for evaluating and certifying ccTLD managers have been established by processes, standards and principles developed by the Internet community and documented in several publications like, "RFC 1591," publicly available at http://www.ietf.org/rfc/rfc1591.txt, "ICP-1," publicly available at https://www.icann.org/resources/pages/delegation-2012-02-25-en, the Governmental Advisory Committee Principles for Delegation and Administration of ccTLDs, publicly available at http://archive.icann.org/en/committees/gac/gac-cctldprinciples-23feb00.htm, and others.  These standards and principles set out the criteria against which requests to establish and/or change ccTLD managers are to be assessed.  The criteria include demonstrating technical and administrative competency, providing information that shows the domain will be managed in the relevant country, providing consent to the change by directly involved parties (such as from an incumbent ccTLD manager if a change to another manager is requested), demonstrating that the request serves the country's local Internet community's interests, demonstrating government review and consideration, and demonstrating a stable transfer plan.  The major concern in selecting a manager for a country-code domain is that it be able to carry out the necessary responsibilities, and have the ability to do an equitable, just, honest and competent job.

13.     Shortly after ICANN was created, it sought to formalize its expectations of many ccTLD managers.  To this end, ICANN has entered into simple letter exchanges or memoranda of understanding with some ccTLD managers that document their technical responsibilities.  Some

ccTLD managers make contributions to ICANN to defray ICANN's costs of operations, but these contributions are on a voluntary, non-mandatory basis.  There are, however, a number of ccTLD managers with which ICANN:  (1) has no agreement; and (2) from which ICANN receives no contributions.  The managers of the .IR, .SY and .KP ccTLDs and their related IDN ccTLDs (collectively these ccTLDs are referred to the ".IR, .SY and .KP ccTLDs") have no agreement with ICANN, and pay no licensing or other fees to ICANN of any kind.

14. There are approximately 530,000 second-level domain names currently registered in the .IR ccTLDs, according to the NIC.IR website, http://www.nic.ir/Statistics.  As set forth above, the domain names before the last dot are the names that help locate individuals, businesses, charitable and other organizations and serve as their connection to a single, global interoperable Internet.

15. Since at least 2005, when ICANN began electronically tracking communications with ccTLD managers pertaining to the IANA functions, ICANN has had sporadic interaction with the managers of the .IR, .SY and .KP ccTLDs.  These communications have been technical in nature, usually relating to a change in contact information for a technical or administrative contract, or relating to the activation or de-activation of servers hosting the ccTLDs.

16. ICANN has never entered into any form of agreement with the managers of the .IR, .SY or .KP ccTLDs.  ICANN has never obtained any funds or contributions relating to the operation or delegation of the .IR, .SY or .KP ccTLDs.  ICANN is not now, nor ever has been, indebted to the managers of the .IR, .SY or .KP ccTLDs.  ICANN is not now, and never has been, indebted to the governments of Iran, Syria or North Korea.

I declare under penalty of perjury, under the laws of the United States, that the foregoing is true and correct.

This declaration was signed on July 29, 2014 at Los Angeles, California.

_____
John O. Jeffrey

## **CERTIFICATE OF SERVICE**

II certify that on July 29, 2014, I served one copy of the foregoing: **Declaration of John O. Jeffrey In Support of Non-Party ICANN's Motion to Quash Plaintiffs' Writs of Attachment** with the Clerk of the Court for the U.S. District Court for the District of Columbia using its CM/ECF System.

I further certify that I caused to be served one copy by First Class Mail, postage prepaid, on the following:

> Robert J. Tolchin
> Berkman Law Office, LLC
> 111 Livingston Street, Suite 1928
> Brooklyn, NY 11201
>
> *Counsel for Plaintiffs*

Dated: July 29, 2014

*/s/ Tara Lynn R. Zurawski*

Tara Lynn R. Zurawski (DC Bar No. 980960)